UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MICHAEL COLLINS, SR., ) | |
| ) | |
| *Petitioner,* ) | |
| ) | |
| v. ) | No. 2:22-cv-00567-JPH-MG |
| ) | |
| FRANK VANIHEL, ) | |
| ) | |
| *Respondent.* ) | |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DIRECTING THE ENTRY OF FINAL JUDGMENT**

Petitioner Michael Collins, Sr., was convicted in a prison-discipline proceeding of attempting to traffic and sanctioned with the loss of 90 days of good-time credit and the imposition of one demotion in credit-earning class. Mr. Collins has filed a Petition for a Writ of Habeas Corpus challenging the constitutionality of his disciplinary conviction. Dkt. 1. For the reasons explained below, the Court has found no constitutional infirmity with the disciplinary proceeding, so the Court **DENIES** Mr. Collins's Petition.

**I.
Factual Background**

In August 2022, officials at Wabash Valley Correctional Facility discovered a letter signed "Kevin Miller" that provided instructions on how to apply chemicals to pages of a book that could be used as intoxicants, and how to get the book into the prison. Dkt. 12-2. The letter was styled as a legal motion, labeled as "legal mail," written with numbered paragraphs, and addressed to Kevin Miller's alleged attorney, Bob Collins Jr. *Id.* at 1-2. Though signed by

1

"Kevin Miller," prison officials alleged that it had been written by Mr. Collins to his brother, Bob Collins Jr.  *See id.* at 5-6 (writing to his "bro").

In relevant part, the letter stated:

> <u>Motion hoping you take he[e]d and at least try this time</u>
>
> Comes now the Defendant pro se and without counsel respectfully requesting you at least try to figure this shit out since there's no risk and lots of reward."
>
> \* \* \*
>
> 3.  You gave excuses last time due to being terrified of the mailing . . . .
>
> 4.  The facility has changed its policy on books - reading books. They will now allow used books as long as they come from any book store.
>
> \* \* \*
>
> 6.  [L]ook up the info on the bug spray. . . .
>
> 7.  The spray must be clear [and] colorless.
>
> \* \* \*
>
> 10.   Don't spray the first 10 pgs go in to like 20 or 30 and spray 20 pgs.  Do the back and front.
>
> \* \* \*
>
> 13.   Go to any book place and pay postage they'll mail it to me. Just give my info and a bull\*\*\*\* name for you, they'll most likely not ask since it'll be coming from them.  There is a place in Bloomington that sends only to prisoners[, so] there has to be a book store in Morgan County Somewhere.
>
> \* \* \*
>
> 15.   If this s\*\*\* smokes and has a head change like the real s\*\*\* then we'll be in some money for sure.
>
> Now listen mothaf\*\*\*a I just did you a solid and did the brother thing, got the felony off you . . . . Now I'm asking you to do something

> f***ing simple.  There is no risk. . . . It's not a law break to spray Raid on a d*** book. . . . Bro I've been asking this for years.  I've lost some money on this . . . . Be my brother man stop playing p***y. . . .  What would make you feel safe?  Me write a judge . . . ?
>
> I hereby swear this is safe and no risk.  We just gotta find the s*** that smokes. . . . Sent this 12 day of Aug 2022. . . . Bro I just wrote this s*** on a motion form explain[ing] how to send me spray on used books and I got to you under a false name.  There's not a Kevin Miller . . . And they're suppose[d] to check.

*Id.*

A prison mailroom clerk discovered the letter.  Dkt. 12-1 at 1.  The next day, on August 17, 2022, Officer Barbara Brock filed a Conduct Report charging Mr. Collins with committing offense A111/113, "Conspiracy/Attempting/Aiding or Abetting/Trafficking."  *Id.*  The Conduct Report states as follows:

> [W]hile monitoring outgoing offender mail a letter was found going out to Bob Collins Jr.  In the letter Michael Collins #966869 was instructing Bob Collins Jr. to get a paper back book or magazines and spray them with bug spray that is clear and odorless.  [Michael Collins] instructed [Bob Collins Jr.] to spray certain pages front and back and have a book store send them in.
>
> Michael Collins #966869 explained in the last page that he used a false name on the envelope (Kevin Miller #106879).  There is no Kevin Miller at WVCF.  The name the letter was addressed to was [run] through [the] system and was found to be related to Michael Collins #966869.

*Id.* Mr. Collins pleaded not guilty.  Dkt. 12-3 at 1.

At screening, Mr. Collins requested a lay advocate and indicated that he did not wish to call any witnesses.  *Id.*  Mr. Collins then requested evidence, including a copy of his letter.  Dkt. 12-5 at 1.  This request was denied due to confidentiality, but Mr. Collins was allowed to see the letter.  *Id.*  Mr. Collins also requested an explanation of the process of determining how "Bob Collins Jr. is linked to [him]."  *Id.* at 2.  In response, the prison explained that "Bob Collins Jr.

3

was ran through the Indiana Attorney list and was not" found, but that Bob Collins's account on GTL messenger showed Mr. Collins as his "only contact." *Id.*; dkt. 13 at 1-2 (log of GTL contact list filed ex parte with the Court). Mr. Collins also requested to "call witnesses on [his] behalf to explain the inconsist[encies] of mail handling," including an apparent reference to the mail room clerk who discovered the letter. Dkt. 12-5 at 4. This request was denied as irrelevant. *Id.* Mr. Collins also requested to "face [his] accusers of this Conduct [Report] in person," including the mailroom clerk who discovered the letter. *Id.* at 6. This request was ultimately denied. *See* dkt. 12-6 at 1 (hearing report indicating that Mr. Collins was "not allowed to . . . call witnesses").

At the disciplinary hearing, Mr. Collins again requested witnesses, at which time the hearing officer asked what the witnesses would say. Dkt. 12-9 at 2. Mr. Collins stated that the witnesses would testify to there being "a lot of inconsistenc[ies] with the mailroom." *Id.* The request was denied but the hearing officer wrote everything down. *Id.* Mr. Collins was convicted. Dkt. 12-6 at 1. His custodial punishments included a loss of 90 days of good-time credit and the imposition of a previously suspended sanction that demoted his credit-earning class by one level. *Id.*

Mr. Collins appealed, and in his first-level appeal argued that he was improperly denied an opportunity to present evidence, to receive a copy of the letter, and to face his accusers. Dkt. 12-9 at 2; dkt. 12-10. His first-level appeal was denied, as was his second-level appeal. Dkt. 12-9 at 1; dkt. 1-1 at 24. Mr.

Collins has now filed a Petition for a Writ of Habeas Corpus, seeking relief from his disciplinary conviction. Dkt. 1.

## II.
## Analysis

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

Mr. Collins makes several arguments that can be grouped into three claims: (1) that he was denied the right to present evidence, including the bug-spray letter, certain witnesses, an opportunity to face his accuser, and a copy of GTL documents connecting him to Bob Collins Jr; (2) that he was denied a lay advocate; and (3) that there was insufficient evidence to convict him. Dkt. 1; dkt. 1-1 at 3–7.[1]

---

[1] For two of these arguments, the Respondent argues that Mr. Collins failed to exhaust his arguments in his first-level internal appeal, but the Court elects to bypass the question of procedural default and address Mr. Collins's claims on the merits. *See Brown v. Watters*, 599 F.3d 602, 609-10 (7th Cir. 2010).

### A. Sufficiency of the Evidence

Mr. Collins argues that his hearing "concluded with absolutely no evidence being provided, (letter) no witnesses allowed on [his] behalf, no facing [his] accusers, nor was the evidence from [the] mailroom accepted." Dkt. 1-1 at 7. He argues that the hearing officer did not consider that "if Kevin Miller stated he was using a fake name," then "Bob Collins Jr." could also be fake. *Id.* at 8. He avers that "if [he] allegedly wrote the letter and was aware that [he] couldn't put [his] name on the return," then he would not have named Bob Collins Jr., with whom he shares the same last name. *Id.* at 8. The Respondent argues that there was sufficient evidence to convict Mr. Collins and show that he and Bob Collins are brothers, and that the letter contains "nearly identical handwriting in [Mr.] Collins' first appeal and petition." Dkt. 12 at 10-11. In reply, Mr. Collins admits that "he wrote the letter," and "that its contents support" his offense, but asserts that the letter simply represents him "contemplat[ing]" whether to take action. Dkt. 17 at 7.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence

6

standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board."). A Conduct Report "alone" can "provide[] 'some evidence' for the . . . decision." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

Offense A-111, "conspiracy/attempting/aiding," is defined as "[a]ttempting by one's self or with another person or conspiring or aiding and abetting with another person to commit any Class A offense," which includes trafficking. Dkt. 12-11 at 2. Offense A-113, "Trafficking," is defined as "[g]iving, selling, trading, transferring, or in any other manner moving an unauthorized physical object to another person." *Id.*

Mr. Collins's letter, which he admits to writing, provides sufficient evidence to support his intention to traffic: It is styled as a fake legal motion, uses a fake name, and admits to using a fake legal motion and fake name. Indeed, it says, "I just wrote this shit on a motion form explain[ing] how to send me spray on used books and I got to you under a false name." Dkt. 12-2 at 6. It then provides detailed instructions on how to covertly lace pages of a book with intoxicants; explains how to get the book into the prison; and assures Mr. Collins's brother that there is no risk and that there is money to be made. *Id.* at 5–6.

Both the letter and the Conduct Report thus provide some evidence that Mr. Collins engaged in Offenses A-111/113 and Mr. Collins is not entitled to habeas relief on this ground.

### B.  Denial of Lay Advocate

Mr. Collins argues that his request for a lay advocate was unlawfully denied. Dkt. 1-1 at 7. He states that he "requested for a lay advocate to be present at his hearing" "for the purpose of being a witness, assisting with the hearing and possibly the appeal process." *Id.* at 4. At the hearing, though, Mr. Collins contends that the hearing officer stated she "didn't have time to stop and get" the staff member. *Id.* at 7. The Respondent argues that "a prisoner may have a constitutional right to a lay advocate, but only if the prisoner is illiterate or" the case is sufficiently complex, neither of which is true for Mr. Collins in this case. Dkt. 12 at 8-9.

Due process does not require the appointment of a lay advocate unless an "illiterate inmate is involved . . . or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992) (quoting *Wolff*, 418 U.S. at 570). Mr. Collins is not illiterate; he has tendered a coherently written Petition. Nor was the issue complex; the primary dispute concerned the letter and who wrote it, which Mr. Collins now admits to doing. Dkt. 17 at 7 (Mr. Collins admitting that "he wrote the letter").

Mr. Collins's argument that he was denied a lay advocate is not a basis for habeas relief.

### C.  Denial of the Right to Present Evidence

Mr. Collins argues that he was denied the opportunity to present evidence, stating that he was not allowed a "copy of the letter the facility was using saying

8

[he] allegedly wrote saying to traffic." Dkt. 1 at 3. He states that the disciplinary board "wouldn't accept evidence from [a] caseworker or mail room [that he] attempted to present." *Id.* He states that he was not "allow[ed] a copy of GTL messenger [he] attempted to provide." *Id.* He also argues that he "couldn't call witnesses on [his] behalf," and could not confront accusers, including the mailroom clerk and a caseworker, to challenge certain inconsistencies in the mailroom. *Id.*; dkt. 1-1 at 5-7. The Respondent argues that Mr. Collins was allowed to see the letter; he simply was not able to retain a copy due to confidentiality concerns. Dkt. 12 at 13. The Respondent argues further that the letter is not exculpatory, that the GTL documents were confidential for security reasons since they showed prisoner information, and that "prisoners do not have a right to confrontation or cross-examination." Dkt. 12 at 13-14.

Due process affords an inmate in a disciplinary proceeding a limited right to present "evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. But due process is not violated unless the inmate is deprived of an opportunity to present material, exculpatory evidence. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones*, 637 F.3d at 847, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008).

As to documentary evidence, Mr. Collins was not entitled to present the GTL documents. The prison declined to disclose those documents based on a

9

"bona fide security justification." *Piggie*, 344 F.3d at 679. As the Respondent has explained, the GTL documents show the information of other prisoners, which would pose a security risk if disclosed. The Respondent has filed the GTL documents ex parte with the Court, and upon review, the Court finds that the GTL documents match the Respondent's description, and this concern is valid. Dkt. 13. The GTL documents also were not exculpatory; they show Bob Collins's only contact is Mr. Collins, providing a link between them and further evidence of conspiracy. Further, Mr. Collins was not entitled to possess his letter, which is plainly incriminating—it presents detailed instructions on how to smuggle books soaked in bug spray to sell to other prisoners for intoxication. It specifically notes that it is a fake legal motion and written under a fake name. Moreover, Mr. Collins has admitted that he wrote the letter. Dkt. 17 at 7.

For witnesses, "[i]nmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals." *Piggie*, 344 F.3d at 678 (citing *Wolff*, 418 U.S. at 566). However, "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). Indeed, due process does not require allowing a prisoner to call a witness whose "testimony could have added little." *Forbes v. Trigg*, 976 F.2d 308, 318 (7th Cir. 1992). Mr. Collins was not entitled to call witnesses to probe inconsistencies in the mailroom; there is no evidence that there was unlawful tampering with his letter, and Mr. Collins himself admits that he wrote it. His witnesses were properly denied.

To the extent that Mr. Collins argues that state prison policy permits him to call witnesses, that is not a ground for relief. *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("[A] prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."). While under Indiana statutory law, prisoners facing disciplinary proceedings are generally "entitled to . . . confront and cross-examine witnesses," Ind. Code 11-11-5-5(a)(6), "state-law violations provide no basis for federal habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991). And in any event, such confrontation would not be allowed where it "would result in the admission of irrelevant or repetitive testimony," as would have been the case for Mr. Collins's hearing. Ind. Code 11-11-5-5(a)(6)(B).

Mr. Collins is not entitled to habeas relief on the basis that he was denied the right to present evidence.

### III.
### Conclusion

Mr. Collins's Petition for a Writ of Habeas Corpus is **DENIED**. Dkt. [1]. Mr. Collins's May 3, 2024 motion asking the Court to consider his updated earliest possible release date when prioritizing this case is **GRANTED** as the Court has issued this ruling. Dkt. [22]. Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 2/6/2025

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

11

Distribution:

MICHAEL COLLINS, SR.
966869
WABASH VALLEY - CF
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
CARLISLE, IN 47838

Natalie Faye Weiss
INDIANA ATTORNEY GENERAL
natalie.weiss@atg.in.gov